528 So.2d 6 (1988)
Kenneth John BAUER, Appellant,
v.
STATE of Florida, Appellee.
No. 86-753.
District Court of Appeal of Florida, Second District.
May 18, 1988.
Rehearing Denied July 5, 1988.
James Marion Moorman, Public Defender, and Deborah K. Brueckheimer, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
*7 SCHOONOVER, Judge.
Kenneth Bauer appeals the judgments and sentences imposed upon him after he was found guilty of seven counts of dealing in stolen property in violation of section 812.019, Florida Statutes (1983). We agree with the appellant's contention that the trial court erred in allowing a law enforcement officer to testify regarding information supplied to the officer by a confidential informant because the testimony was inadmissible hearsay. We, accordingly, reverse the appellant's convictions and remand for a new trial.
Kenneth Chouinard, a special agent with the Florida Department of Law Enforcement, was the state's key witness at the trial of the appellant and his codefendant, Tony Scaglione. During the cross-examination of Agent Chouinard, defense counsel posed certain questions designed to establish the defense of entrapment. On redirect examination of Agent Chouinard, the state attempted to rebut the asserted entrapment defense by presenting evidence of the appellant's predisposition to commit the charged offenses. During the colloquy which follows, Agent Chouinard was permitted to testify over defense counsel's objections about certain information he had obtained from an unnamed confidential informant:
Q... . Why did you seek introduction to Mr. Scaglione and Mr. Bauer and start your undercover investigation to begin with in this case?
A. I was given information by a confidential source that there were activities going on in the particular restaurant involving Mr. Scaglione and Mr. Bauer to the fact that dealing and selling of stolen property was occurring within that particular establishment involving those two particular individuals, Mr. Scaglione and Mr. Bauer.
At the conclusion of the state's case, the defense moved to dismiss the charges on the grounds that the appellant and Scaglione had been entrapped as a matter of law. That motion was denied, and the question of subjective entrapment was submitted to the jury. The jury subsequently found the appellant guilty as charged. After the appellant's motion for new trial was denied, he timely filed a notice of appeal from the judgments and sentences imposed as a result of the jury verdicts.
Although the appellant has raised two points on appeal, we find merit only in his contention that Agent Chouinard's testimony regarding the information he had received from the confidential informant was inadmissible hearsay and its erroneous admission was not harmless under the circumstances of this case. We, accordingly, decline to address the other point raised by the appellant.
Hearsay is defined as a statement, other than one made by the declarant while testifying at trial or hearing, offered to prove the truth of the matter contained in the statement. Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982); § 90.801(1)(c), Fla. Stat. (1983). Any reasonable interpretation of Agent Chouinard's testimony leads to the conclusion that it was introduced by the state to prove the truth of the words spoken by the confidential informant, i.e., that the appellant was dealing in and selling stolen property prior to Agent Chouinard's investigation. Although it has long been the law of this state that a law enforcement officer may testify as to what action he took pursuant to information received from a confidential informant, his testimony regarding the content of such information constitutes hearsay. Collins v. State, 65 So.2d 61 (Fla. 1953); Haynes v. State, 502 So.2d 507 (Fla. 1st DCA 1987); Davis v. State, 493 So.2d 11 (Fla. 3d DCA 1986); Postell v. State, 398 So.2d 851 (Fla. 3d DCA), petition for review denied, 411 So.2d 384 (Fla. 1981). Thus, Agent Chouinard's testimony sub judice was clearly hearsay, and absent a specific statutory exception to the contrary, it was inadmissible. See § 90.802, Fla. Stat. (1983). The rule against hearsay and the statutory exceptions thereto are not set aside by the raising of an entrapment defense.
The entrapment defense which focuses on the predisposition of the defendant is termed the subjective view of entrapment. *8 See Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985). When, as here, the defense of subjective entrapment is properly raised, the state has the burden of proving that the accused had the predisposition to commit the offense charged. See State v. Wheeler, 468 So.2d 978 (Fla. 1985). The state may prove predisposition by showing that a defendant has prior convictions or a reputation for committing similar crimes, that law enforcement had a reasonable suspicion that the defendant was engaged in similar crimes, or the defendant showed ready acquiescence to commit the crime suggested by law enforcement. Wheeler; Cruz. See also, State v. Sokos, 426 So.2d 1044 (Fla. 2d DCA 1983).
In support of its use of Agent Chouinard's hearsay testimony, the state cites Story v. State, 355 So.2d 1213 (Fla. 4th DCA), cert. denied, 364 So.2d 893 (Fla. 1978), for the proposition that an officer's reasonable suspicion of the defendant's involvement in similar crimes can be established through the tip of a confidential informant. Although Story contains language which provides some support for the state's argument, the facts in Story did not involve an informant's tip, nor did the court hold that the contents of a confidential informant's out of court statements to an officer are generally admissible notwithstanding the rule against hearsay.[1] To the extent that Story can be interpreted to permit the presentation of inadmissible hearsay in order to rebut the defense of entrapment, we disagree with it.
This position is entirely consistent with our supreme court's holding in Morris v. State, 487 So.2d 291 (Fla. 1986). In Morris, the defendant attempted to establish a defense of entrapment through the presentation of certain hearsay evidence, but the trial court excluded the evidence on the grounds that it was inadmissible hearsay. Our supreme court found that the evidence in question was admissible and, therefore, wrongfully excluded by the trial court. The court, however, did not hold that hearsay statements of a confidential informant are generally admissible, but held that under the facts of that case the statements in question were admissible pursuant to a statutory exception to the hearsay rule, section 90.803(3)(a)(2), Florida Statutes (1983). In fact, the court stated that although an accused should be afforded a reasonable latitude in presenting facts and circumstances concerning entrapment, such evidence must be presented "subject to the ordinary rules of admissibility." Morris at 294 quoting Spears v. State, 264 Ark. 83, 92, 568 S.W.2d 492, 499 (1978). We agree and, furthermore, find no reason to set aside the ordinary rules of admissibility when the state, rather than the defendant, offers the evidence.
At trial and in its appellate brief, the state relied on United States v. Robinson, 446 F.2d 562 (5th Cir.), cert. denied, 404 U.S. 959, 92 S.Ct. 323, 30 L.Ed.2d 277 (1971), Thompson v. United States, 403 F.2d 209 (5th Cir.1968), and Rocha v. State, 401 F.2d 529 (5th Cir.1968), cert. denied, 393 U.S. 1103, 89 S.Ct. 905, 21 L.Ed.2d 796 (1969), to support its position that the hearsay testimony sub judice was admissible to rebut the defense of entrapment. Although these cases illustrate the fact that the Fifth Circuit had for some time permitted the government to introduce hearsay as proof of the defendant's predisposition, the line of cases permitting the admission of such evidence was specifically overruled in United States v. Webster, 649 F.2d 346 (5th Cir.1981) (en banc). In Webster, the court noted that statements made by an informant to a law enforcement officer about *9 specific instances in which the defendant engaged in criminal activities when offered to prove predisposition of the defendant are "out-and-out hearsay." Webster at 349. The court went on to state that predisposition is a state of mind, and that:
Our creation of a rule that allows gross hearsay evidence to be used to prove predisposition has resulted in the very evils that the rule against hearsay was designed to prevent. The jury is free to believe the unsworn, unverified statements of government informants, sometimes unidentified, whose credibility is not subject to effective testing before the jury and whose motivations may be less than honorable. We are hard pressed to envision a situation where the disparity between the probative value and prejudicial effect of evidence is greater.
Webster at 350 (footnote omitted). The court concluded by holding that hearsay evidence is never admissible for the purpose of proving the defendant's predisposition and stated, "All prior decisions of this Court to the contrary are hereby overruled." Webster at 350.
We agree with the rationale of the Webster court. Furthermore, we are aware of no cases, including the cases cited in the dissent, where a Florida court has held that hearsay evidence can be used to prove or disprove subjective entrapment despite a proper objection that such evidence is not specifically described by a statutory exception to the rule against hearsay. To the contrary, our supreme court specifically stated in Morris that evidence pertaining to the facts and circumstances of entrapment must be presented according to the ordinary rules of admissibility. We, accordingly, hold that where an accused has raised the defense of entrapment, hearsay is only admissible to prove predisposition according to the usual rules of evidence. See Morris. See also, United States v. McClain, 531 F.2d 431 (9th Cir.), cert. denied, 429 U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1976); United States v. Ambrose, 483 F.2d 742, 752 (6th Cir.1973); United States v. Johnston, 426 F.2d 112, 114 (7th Cir.1970); United States v. Catanzaro, 407 F.2d 998, 1001 (3d Cir.1969); Whiting v. United States, 296 F.2d 512, 517 (1st Cir.1961); Bowser v. State, 50 Md. App. 363, 439 A.2d 1 (Md. Ct. Spec. App. 1981). Clearly, the state is free to rebut an asserted defense of subjective entrapment by attempting to establish that the investigating officer had a reasonable suspicion that the defendant was engaged in similar crimes. Wheeler; Cruz; Sokos. This reasonable suspicion, however, may not be established at trial through the presentation of inadmissible hearsay. See Morris.
In so holding, we have not, as the dissent suggests, ignored our obligation to follow the precedents established by this court and our supreme court, and to at least consider the decisions of our sister courts. Rather, it is the holding of our supreme court in Morris which requires us to reverse the appellant's conviction in this case. Furthermore, it appears that the dissent has overlooked the binding precedent established in Morris and, instead, has chosen to rely upon the dissent in Webster, which has no precedential value, and several Florida cases none of which actually address the issue presented here.
For example, the dissent relies upon Kimmons v. State, 322 So.2d 36 (Fla. 1st DCA 1975), cert. dismissed, 336 So.2d 106 (Fla. 1976), cert. denied, 429 U.S. 923, 97 S.Ct. 322, 50 L.Ed.2d 291 (1976), for the proposition that a confidential informant's out of court statement is admissible to prove a defendant's predisposition. The facts in Kimmons, however, do not reveal that a hearsay objection was before the trial court in regard to the out of court statements of the informants. Further, one of the informants in Kimmons testified at trial as a state's witness. In Kimmons, our sister court did not address whether hearsay is generally admissible as a means to rebut the defense of entrapment but, rather, was called to determine whether the defense of entrapment had been established at trial as a matter of law.
In addition, the dissent relies upon the following cases in support of the proposition that the hearsay testimony involved here was properly admitted to prove that *10 Agent Chouinard had a reasonable suspicion that the appellant was involved in criminal activity: State v. Cobbs, 411 So.2d 212 (Fla. 3d DCA 1982); State v. Lewis, 406 So.2d 79 (Fla. 2d DCA 1981); State v. Klepfer, 392 So.2d 275 (Fla. 2d DCA 1980); Sanders v. State, 385 So.2d 735 (Fla. 2d DCA 1980); and State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979), approved, 387 So.2d 963 (Fla. 1980). None of these cases, however, involved the use of hearsay evidence at a trial. Rather, all of these cases involved suppression hearings, and it has been held that hearsay evidence is admissible at such a pretrial hearing. See, e.g., Lara v. State, 464 So.2d 1173 (Fla. 1985).
Turning back to the hearsay evidence at issue here, we cannot say the state's presentation of this evidence was harmless error because Agent Chouinard's inadmissible testimony was crucial to the state's ability to rebut the appellant's defense of entrapment. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). We, accordingly, reverse and remand for a new trial consistent with this opinion.
Reversed and remanded.
PARKER, J., concurs.
CAMPBELL, A.C.J., dissents with opinion.
CAMPBELL, Acting Chief Judge, dissenting.
I must respectfully, yet forcefully, dissent for I feel the majority opinion flies in the face of established precedent of not only this court, State v. Sokos, 426 So.2d 1044 (Fla. 2d DCA 1983); and of our sister courts, State v. Casper, 417 So.2d 263 (Fla. 1st DCA 1982), Moody v. State, 359 So.2d 557 (Fla. 4th DCA 1978), Story v. State, 355 So.2d 1213 (Fla. 4th DCA), cert. denied, 364 So.2d 893 (Fla. 1978); Kimmons v. State, 322 So.2d 36 (Fla. 1st DCA 1975), cert. dismissed, 336 So.2d 106 (Fla. 1976), cert. denied, 429 U.S. 923, 97 S.Ct. 322, 50 L.Ed.2d 291 (1976); Dupuy v. State, 141 So.2d 825 (Fla. 3d DCA 1962), cert. denied, 147 So.2d 531 (Fla. 1962); but also of our supreme court, State v. Wheeler, 468 So.2d 978 (Fla. 1985), Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985). While we are not bound by the decisions of our sister courts and could recede en banc from the previous precedents of this court, we have no such liberty with the precedents established by our supreme court. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). Therein lies what I perceive to be the fallacy of the majority's position in relying upon United States v. Webster, 649 F.2d 346 (5th Cir.1981).
Webster was an en banc decision of that court wherein the court divided fifteen to nine in receding from the longstanding rule of that Circuit that permitted introduction of out-of-court statements about the defendant's reputation and prior criminal conduct in cases where the issue of entrapment had been raised. As the en banc majority in Webster noted, previous three-judge panels of that court had concluded they were barred by previous Fifth Circuit precedent from receding from that long established rule. I submit that the previous rule of the Fifth Circuit, as stated in United States v. Robinson, 446 F.2d 562 (5th Cir.), cert. denied, 404 U.S. 959, 92 S.Ct. 323, 30 L.Ed.2d 277 (1971), was analogous to the rule that has also long been the established rule in Florida as announced in the Florida cases I have heretofore cited. The problem in the majority relying upon Webster is that the Florida rule remains precedentially sound. Our supreme court has not receded from the rule as announced in Wheeler and Cruz, and we are without authority to do so. The supreme court in Wheeler was not engaging in an exercise in obiter dictum, but was adopting a very clear and precise rule when it adopted the Florida rule[1] in one concise paragraph:

We adopt the four-step procedure of Moody. The defendant has the initial burden of establishing a prima facie case of entrapment. The trial court determines *11 the legal sufficiency of the evidence of entrapment. If the defendant has not made a prima facie case, the defense of entrapment does not go to the jury. If, however, a prima facie case is made, the issue of entrapment is submitted to the jury with appropriate instruction, Florida Standard Jury Instruction (Criminal) 3.04(c), but the jury is not instructed on the defendant's initial burden of establishing a prima facie case. The burden lies with the state to disprove entrapment, which is usually done by proving the predisposition of the defendant beyond a reasonable doubt. Story v. State. The state may prove predisposition by showing that the defendant had prior convictions or a reputation for engaging in similar illicit acts, by showing that the investigating officers had a reasonable suspicion that the defendant was engaging in such acts, or by showing the defendant's "ready acquiescence." Cruz v. State, 465 So.2d 516 (Fla. 1985); Story.

468 So.2d at 981. (Emphasis supplied.)
Moreover, the decisions of federal courts, even those of the United States Supreme Court, are not controlling or even necessarily persuasive in regard to the subject of entrapment in state courts. Entrapment, whether it is recognized as a defense and, if so, how it is pleaded and the burden of proof in regard thereto, has so far remained exclusively within the rule-making and precedent-establishing authority of the particular jurisdiction that recognizes the defense. As our supreme court observed in Cruz, citing United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d at 366 (1973), the defense of entrapment is not of constitutional dimension. 465 So.2d at 518. Indeed, as the fourth district observed in Moody, when it first announced the rule later adopted by the Florida Supreme Court in Wheeler:
The federal view of the burden of proof on entrapment is not binding on the States because it is not based on any constitutional requirement. State v. Brown, 287 A.2d 400 (Del.Super. 1972). Thus, California requires by statute that the defendant prove entrapment by a preponderance of the evidence. See, People v. Moran, 1 Cal.3d 755, 83 Cal. Rptr. 411, 463 P.2d 763 (1970). Many states require the defendant to prove entrapment by a preponderance of the evidence before requiring the state to disprove entrapment beyond a reasonable doubt. State v. Grilli, 304 Minn. 80, 230 N.W.2d 445 (1975); State v. Amundson, 69 Wis.2d 554, 230 N.W.2d 775 (1975); Commonwealth v. Miller, 361 Mass. 644, 282 N.E.2d 394 (1972). Others adhere to the typical view that a defendant has the burden of proving all affirmative defenses such as self-defense and entrapment by a preponderance of the evidence without placing any burden at all upon the state. Commonwealth v. Wilkes, 414 Pa. 246, 199 A.2d 411 (1964), cert. den., 379 U.S. 939, 85 S.Ct. 344, 13 L.Ed.2d 349 (1969); State v. Rogers, 43 Ohio St.2d 28, 330 N.E.2d 674 (1975). The freedom of the states in this regard is illustrated in Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977) where the Court said:
"We thus decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused... . Proof of the nonexistence of all affirmative defenses has never been constitutionally required...."
359 So.2d at 560.
As the majority observes, appellant below had asserted the entrapment defense. In Florida, the rule clearly is that once the defense has asserted a prima facie case of entrapment, the state then must prove that appellant was predisposed to commit the offense charged. As Wheeler, Cruz, Sokos, Casper, Moody, Story, Kimmons, Dupuy and other cases all hold, the state may prove predisposition of a defendant by evidence of the investigating officer's reasonable suspicion of the defendant's involvement in criminal activity in the nature of the offense with which he is charged. None of those cases, in announcing and *12 following that rule, qualify in any way the historically-accepted method of proving an officer's "reasonable suspicion." Historically, evidence of an officer's reasonable suspicions of a defendant's involvement in criminal activity has come from information from reliable confidential informants. The reliability of the confidential informant is not an issue on this appeal nor is the sufficiency of appellant's assertion of a prima facie case of entrapment. Since the state's burden relating to a defendant's predisposition clearly is to present evidence that the defendant was predisposed to commit the offense charged, it would not be sufficient, as the majority suggests, for the officer to merely "testify as to what action he took pursuant to information received from a confidential informant" without testifying to the content of that information. It is that very content that establishes the basis for the officer's reasonable suspicion that a defendant may currently be involved in criminal activity because the officer has information indicating the defendant's prior involvement in criminal activity of the same nature. As the court in Dupuy stated regarding predisposition: "[I]n a case where the defense of entrapment is raised it is incumbent upon the state to make a showing amounting to more than mere surmise and speculation that the intent to commit crime originated in the mind of the accused and not in the minds of the officers of the government." 141 So.2d at 827. Moreover, since the question of predisposition is a question of fact for the jury, Cruz, 465 So.2d at 519, the jury must hear the evidence that led to the law enforcement officer's "reasonable suspicions." Relying on the very absence of such proof, the supreme court in Cruz upheld the defendant's entrapment defense based upon a lack of showing of predisposition by stating:
The record thus implies police were apparently attempting to interrupt some kind of ongoing criminal activity. However, the record does not show what specific activity was targeted. This lack of focus is sufficient for the scenario to fail the first prong of the test.
465 So.2d at 522. (Emphasis supplied.)
Admittedly, an officer's "reasonable suspicion" is not a factor that is normally relevant to the fact finder in a criminal trial. That issue usually arises in the determination by the trial judge of the propriety of an arrest or search and seizure. Where, however, that "reasonable suspicion" has been made relevant by appropriate court rule or precedent for the ultimate trier of fact, there has never been any indication that the standard of proof on the question of "reasonable suspicion" should be any different for the ultimate trier of fact than for the trial judge on a motion to suppress. This court has often and repeatedly held that an officer's reasonable suspicion of criminal activity based upon confidential information is justified if the specificity of the information is detailed to the court by the officer's testimony. State v. Klepfer, 392 So.2d 275 (Fla. 2d DCA 1980); Sanders v. State, 385 So.2d 735 (Fla. 2d DCA 1980); State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979), dec. approved, 387 So.2d 963 (Fla. 1980). As this court said in State v. Lewis, 406 So.2d 79, 80 (Fla. 2d DCA 1981), "However, for purposes of deciding whether there is sufficient evidence to support a well-founded suspicion, a court should consider all of the facts known to an officer up until the time he makes the stop." (Emphasis supplied.) In this case, all of the facts that formed the basis of the officer's reasonable suspicion consisted of what the informant told the officer rather than merely the fact that the officer had received unspecified information.[2]
The majority, because Story did not factually involve an informant's tip, disagrees with Story to the extent it is interpreted to permit introduction in evidence of what the majority labels "inadmissible hearsay." That label is, in my opinion, erroneous. The testimony elicited from the officer below *13 was not hearsay. The majority arrives at what I perceive to be error by concluding that "any reasonable interpretation of Agent Chouinard's testimony leads to the conclusion that it was introduced by the state to prove the truth of the words spoken by the confidential informant, i.e., that the appellant was dealing in and selling stolen property prior to Agent Chouinard's investigation."
In my opinion, that is simply not the case. The evidence was introduced to establish only the validity of Agent Chouinard's "reasonable suspicion." As the court in State v. Cobbs, 411 So.2d 212, 213 (Fla. 3d DCA 1982) so well states:
It is apodictic that the founded or articulable suspicion which justifies a stop is not the same as proof beyond a reasonable doubt which justifies a conviction. A police officer's hearing may deceive him, but so may his sense of sight, smell, taste and touch. We do not require that an officer's suspicion prove to be right; we require only that the suspicion be founded and articulable. Moreover, the law does not require that every police officer have with him a narcotics sniffing dog, a panoramic breathalyzer, a radar gun, or a decibel counter to verify what he smells or sees or hears. And, of course, neither we nor any other court will invalidate a lawful stop simply because it turns out that the senses deceive, any more than we will validate an unlawful search by what is found.
(Emphasis supplied.) Thus, it is never necessary to prove the truth of the information upon which a reasonable suspicion is based, but only that the officer justifiably relied upon it.
The very definition of "hearsay" is that it is a statement, other than one by the declarant, offered to prove the truth of the matter asserted. § 90.801(1)(c), Fla. Stat. (1985). The testimony of Agent Chouinard as to what the informant informed him that created Agent Chouinard's reasonable suspicion was, therefore, not hearsay. As the trial judge below properly held in allowing the testimony:
The State has the right to show that Mr. Scaglione and Mr. Bauer were not randomly selected or exposed, and I will allow the State to ask Mr. Chouinard as to why he sought introduction to Mr. Scaglione and Mr. Bauer concerning the proffer, also, the other cases show that a confidential informant and hearsay may be utilized to show predisposition.
While the majority dislikes Story because it did not actually involve evidence of a confidential informant's information, Kimmons v. State, 322 So.2d at 37, in considering the predisposition of a defendant, does involve such testimony. That court stated:
The issue is whether the evidence viewed most favorable to the State demonstrates that, at a time when appellant Kimmons had no intention to deliver drugs, agent Cardwell induced Kimmons to commit the crime by offering and paying Kimmons eighteen dollars for six capsules of a barbiturate. If at the time of the encounter Kimmons already had the intent and predisposition to commit an offense of the character charged, his conviction will not be vitiated by Cardwell's conduct furnishing an opportunity to commit the offense. See Lashley v. State, 67 So.2d 648 (Fla. 1953); Spencer v. State, 263 So.2d 282 (Fla.App. 1st, 1972).
On December 1, 1973, agent Cardwell approached Kimmons pursuant to plan and asked to buy drugs. Cardwell and other agents had previously received information from a number of sources, particularly two fifteen year-old girlfriends of Kimmons' daughter, that Kimmons had delivered drugs to minors. One of the young girls told the agents and later testified that Kimmons furnished her drugs and on one occasion took sexual liberties with her while she was under the influence of the drugs.
... .
The issue then is whether Kimmons' evident disposition unlawfully to deliver controlled substances, as demonstrated by his prior conduct reported to the agents and described to the jury, was a sufficient predicate for the agent's proposal *14 on December 1, 1973 and thereafter that Kimmons deliver drugs for cash.
We hold that the trial court properly submitted the case to the jury.
The majority, as previously noted, relied heavily on the reasoning of the majority of the then Fifth Circuit in Webster. In my opinion, the quote from Webster relied upon by the majority (649 F.2d at 350) demonstrates that the Webster majority was misguided in its concern about possible prejudice to the defendant by introduction of such testimony that it also mistakenly labeled as hearsay.
This type of testimony is not so prejudicial as the Webster majority states because it is allowed in solely to rebut the defense of entrapment that has been affirmatively raised by the defendant. Entrapment is something akin to a plea of confession and avoidance. The defendant admits the offense, but seeks to avoid the consequences of it because, the defense alleges, the state induced him to perform the act. Normally, the severe prejudice of allowing testimony concerning prior similar conduct by a defendant comes about because it may influence a jury to believe that because a defendant may have done such a thing in the past, he might therefore be guilty of doing the act with which he is charged. Because in an entrapment case the issue is not whether a defendant committed an act, but why, the possible prejudicial effect on a jury by the use of such prior act testimony is simply not present.
Where admissible evidence is both relevant and prejudicial, it is the trial judge's function, not ours, to weigh those factors and rule on the admissibility. The trial judge did just that in this case. See § 90.403, Fla. Stat. (1985). Furthermore, because I conclude that the law in Florida is still the same as the pre-Webster rule in the Fifth Circuit, I feel constrained to set forth a peculiarly applicable portion of the nine-judge dissent in Webster in support of my dissent:
The majority correctly notes that the entrapment defense is unique to our country's jurisprudence. In practice, it takes the form of an attack on the prosecution as being one for a crime that was instigated by the government itself  a further instance of our American love of fair play, our distrust of sovereigns, and our taste for a near-run thing. As we shall see later, the Supreme Court has never entirely agreed about why such a defense should be recognized at all.
... .
Recurringly, as here, the accused attempts to demonstrate his innocence of predisposition by highlighting the strength and malevolence of the inducements applied to him by the government  an attacking defense that puts the prosecution on trial. And, just as predictably, the government defends by attempting to show that the accused was not an innocent, had done such things before, and the like. Since the accused's attack, as here, necessarily impugns both the methods employed by the government and its motives and actions  implicating innocents in contrived crimes  the government often seeks to show that the accused was not an innocent at all. And since its motives and tactics are attacked as well, it offers proof that its belief in the accused's predisposition was a reasonable one. This seems to me a proper response to the attack of the accused, an attack which in the nature of things can scarcely avoid  and will seldom wish to  demeaning the government's means and motives in setting the trap that caught him. Necessarily, such a response will often rest in large part on hearsay: the reports on which the government acted in deciding to provide the opportunity. And to ignore these evident realities is to exclude in advance, and without regard to the balancing test laid down for such occasions by Rule 403, evidence which may be of great relevance and probative force.
Logically, if the character of the government's conduct is a proper issue in the case, then the motive with which it acted is an appropriate subject of proof. One form such proof may take is that of hearsay evidence going to the government's state of mind in providing inducements *15 to the accused, evidence offered not for the truth of the matter asserted in hearsay but to show the reasonableness of the government's belief that it was dealing with an unwary criminal, not an unwary innocent.
649 F.2d at 352-353. (Footnotes omitted.)
One final note to demonstrate we are all human and sometimes misstate what we mean. The dissent in Webster also refers to the "testimony offered not for the truth of the matter asserted" as "hearsay." I conclude, as I have previously stated, that under the Florida definition of hearsay, and I believe under the correct federal definition, such testimony is in fact not hearsay.
I would affirm appellant's conviction and sentence.
NOTES
[1] One could argue that the confidential informant's out of court statement was not hearsay because it was not offered to establish the truth of the matter asserted but, rather, offered to establish that Agent Chouinard had a reasonable suspicion that the appellant was involved in similar criminal activity. While such an argument may be facially appealing, it is clear that the prosecution ultimately used the out of court statement as a means to establish that the appellant was predisposed to deal in stolen property in order to rebut his defense of entrapment. See Wheeler; Cruz; Sokos. Since the content of the informant's statement was that the appellant had been dealing in stolen property, the statement was in fact used to prove the truth of the matter asserted and, therefore, constituted hearsay. § 90.801(1)(c).
[1] We are not called upon in this case to interpret or otherwise consider section 777.201, Florida Statutes (1987).
[2] Contrary to the interpretation by the majority, Morris v. State, 487 So.2d 291 (Fla. 1986) does not hold otherwise, nor is it contrary precedent. The Morris decision quoted with approval Wheeler and Cruz and stated: "In order for the jury to consider predisposition, it must have all facts related to government inducement." 487 So.2d at 293. (Emphasis supplied.)